In the Matter of Robert Corradino, Respondent, v Barbara Corradino, Appellant.

Third Department, November 16, 1978

## APPEARANCES OF COUNSEL

*Mazza, Williamson & Clune (Robert J. Clune* of counsel), for appellant.

*L. Richard Stumbar* for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

The parties were married February 6, 1963. Tony, their only child, was born September 10, 1970. In November, 1976, they separated, Tony remaining with his mother in the marital residence. On May 25, 1977, the parties executed a separation agreement which, *inter alia,* provided that the mother have custody of Tony and that the father pay $100 per week for the child's support. Each party was represented by counsel during the negotiations leading to the execution of the agreement. In June, 1977 the parties obtained a dual default divorce. The separation agreement was not incorporated into the divorce decree. In July, 1977, two months after execution of the separation agreement and one month after the divorce, petitioner sought the advice of the Probation Department of Tompkins County relative to the methodology of obtaining custody of his son. On December 7, 1977 petitioner filed a petition in Family Court seeking custody of Tony. Between July, 1977 and December, 1977 petitioner arranged 12 consultations with a child psychologist attended by himself, his wife and Tony. The conceded purpose of these medical consultations was to create and perpetuate testimony for the upcoming custody proceeding, a fact petitioner did not disclose to his wife. In January, 1978 petitioner sought the advice of another child psychologist who examined both petitioner and Tony. Apparently satisfied with that doctor's findings and her conclusions based thereon, petitioner suggested that the doctor convey those findings to the Family Court.* Next, after petitioner had sought the advice of the Tompkins County Probation Department, he visited the Family Court Judge who ultimately conducted the hearings and sought the Judge's "philosophy on custody". Further, although the respondent wife had custody of Tony pursuant to agreement, petitioner continually sought expansion of his visitation rights and when

---

* Counsel for the respondent wife produced a copy of a letter from one Dr. Fisher addressed to the court. The original was not produced and the court denied receipt of the letter.

respondent objected to Tony's expanded absences from home he had Tony call his mother to request additional time. Finally, the record is replete with charts prepared by petitioner to mark Tony's progress and with testimony attesting to his child-rearing philosophy. There is absolutely no proof of changed circumstances subsequent to the date of the separation agreement, or any evidence that Tony's mother is other than a loving, responsible parent.

■ Unquestionably, it is the law of New York that the fundamental consideration in any custody determination is the best interests of the child (Domestic Relations Law, § 70; *Braiman v Braiman,* 44 NY2d 584; *Matter of Bennett v Jeffreys,* 40 NY2d 543; *Matter of Ebert v Ebert,* 38 NY2d 700; *Obey v Degling,* 37 NY2d 768). That goal is best achieved by establishing stability in the custodial relationship *(Matter of Nehra v Uhlar,* 43 NY2d 242). In *Nehra,* the Court of Appeals clearly stated that absent extraordinary change in circumstances, great weight must be accorded to the prior custody arrangement as determined by voluntary agreement of the parties. The cases cited by the Family Court to support the view that absent some judicial review of custody provisions in a separation agreement, such provisions are not accorded their full weight, are not apposite in light of the instruction of *Nehra* and are of little, if any, precedential value. Thus, the Family Court applied a less rigorous standard than that mandated by *Matter of Nehra v Uhlar (supra),* and, in effect, made a *de novo* determination based almost exclusively upon the expressed desire of eight-year-old Tony to live with his father. There must be a reversal.

The record discloses that both parties are fit and loving parents. The respondent mother adheres to the view that while it is necessary for Tony's well-being that he spend time with his father, it is imperative for his complete development and fulfillment that he learn by association with others, his stepsister and playmates, that there are differences between individuals and that the reconciliation of these differences is growth. The petitioner, on the other hand, believes he has made himself an expert on child rearing and insists that virtual martial regimentation of Tony's time and activities in accordance with a plan orchestrated by him is the best method of raising the child.

■ While we do not doubt petitioner's sincerity or his love for his son, we, nevertheless, conclude that it is not in the

long run best interest of Tony that the grant of custody to petitioner be affirmed merely because the boy seems to have responded to petitioner's regimentation. Tony is only eight years old and can best develop into a completely rounded person if he is the recipient of the best each parent has to offer. That goal, in our view, can best be assured by continuing the custody in the mother pursuant to the separation agreement, with the petitioner exercising liberal but reasonable visitation rights. Indeed, the principle of *Matter of Nehra v Uhlar* (43 NY2d 242, *supra)* commands that result.

The order should be reversed, on the law and the facts, and the petition dismissed, without costs.

SWEENEY, KANE, LARKIN and HERLIHY, JJ., concur.

Order reversed, on the law and the facts, and petition dismissed, without costs.