CATHERINE B. ALDOUS, Respondent, v PHILIP D. ALDOUS, Appellant.

Third Department, March 1, 1984

APPEARANCES OF COUNSEL

*Amshoff & Amshoff (Ellen Leary Coccoma* of counsel), for appellant.

*Charles E. Crandall, Jr.,* for respondent.

OPINION OF THE COURT

KANE, J.

Plaintiff and defendant were married in September, 1971 and divorced in May, 1981. There are two issue of the marriage, Kimberly, age 10, and Jennifer, age 8. The decree of divorce referred all matters of custody and support for the children to the Family Court of Otsego County for a hearing on a permanent award. Temporary custody remained in plaintiff with whom the children had been living since the parties' separation in December, 1980. Plaintiff resided in the Village of Richfield Springs, Otsego County, and defendant in the Village of Hudson Falls, Washington County, the site of the matrimonial domicile prior to the separation.

A hearing on the issue of permanent custody was held on September 29, 1981. At the conclusion of the hearing on

that date, Family Court made an interim order continuing temporary custody in plaintiff, with visitation rights to defendant, and directed that he pay $35 per week for the support of his children. It further ordered plaintiff to undergo an examination by a qualified psychologist, at the expense of defendant, to determine her suitability as a custodial parent. In addition, Family Court directed the Probation Departments to conduct an investigation of each party concerning matters pertinent to the issue of custody and file a written report to the court, which, with the consent of each party, would be for its eyes only. After some delay in obtaining the required information, Family Court awarded permanent custody to plaintiff, with reasonable visitation rights to defendant. This appeal by defendant ensued.

The central issue on this appeal arises from the wording of the decision of Family Court. Defendant is a member of the Greater Glens Falls Bible Church and plaintiff is an Episcopalian. In its decision, the court stated:

"The lifestyle that [defendant] has chosen revolving himself around his church is not what the children want or need at this stage. If he were to be awarded custody, their entire lifestyle would have to change to suit him and his new beliefs * * *

"The court finds that it would be in the best interests of the children to leave custody with [plaintiff] * * * rather than to give custody to [defendant] who * * * is more interested in forcing the children to conform to his beliefs than in what is best for the children."

The transcript of the hearing on September 29, 1981 clearly demonstrates that one of the precipitating causes of the deterioration and ultimate dissolution of the marriage herein is the differences in the respective religious beliefs of these parties and, in particular, the requirements necessary to fulfill the principles and practices of the church to which defendant is affiliated.

However, it is defendant's contention that, in making the award of custody to plaintiff, Family Court conducted an inquiry into the religious doctrines and activities of a possible custodial parent, and then based its determination of custody upon its evaluation of those particular religious

activities in deciding what would be in the best interest of the children. Thus, it is alleged, Family Court so entangled matters of church and State as to violate the establishment clause and the free exercise clause of the First Amendment to the Constitution of the United States (*Lemon v Kurtzman,* 403 US 602).

In any custody dispute, the court's primary concern is that the final determination of a custodial parent is in the best interest of the child (Domestic Relations Law, § 240; *Friederwitzer v Friederwitzer,* 55 NY2d 89). Many factors enter into that determination, and there are no absolutes. When presented as an issue, religion may be considered as one of the factors in determining the best interest of a child, although it alone may not be the determinative factor (see *Matter of Kananack,* 272 App Div 783). In this State, cases which consider religion as a factor in resolving custody disputes generally fall into three separate categories. New York courts will consider religion in a custody dispute when a child has developed actual religious ties to a specific religion and those needs can be served better by one parent than the other (see *Spring v Glawon,* 89 AD2d 980); when a religious belief violates a State statute (see *Matter of Weberman,* 198 Misc 1055, affd 278 App Div 656, affd 302 NY 855, app dsmd 342 US 884); and when a religious belief poses a threat to a child's well-being (see *Spring v Glawon, supra; Matter of Battaglia v Battaglia,* 9 Misc 2d 1067).

Applying these rules to the instant proceeding, it would appear that Family Court's view that defendant's religious beliefs are too discipline oriented is constitutionally proscribed as a basis for awarding custody. However, other grounds enumerated by the court certainly support its determination. The children have been with plaintiff since birth, including the time from the divorce to the final custody decision. Additionally, there was evidence of the degradation of plaintiff by defendant and his parents when the children were with him, and, of singular importance, evidence of plaintiff's stable family life which permits her to care for the children all day on a daily basis. Such factors have been held to be appropriate considerations when awarding custody (*LaBow v LaBow,* 59 NY2d 956; *Corradino v Corradino,* 48 NY2d 894; *Meirowitz v Meirowitz,* 96

AD2d 1030; *Martin v Martin,* 74 AD2d 419; see, also, *Entwistle v Entwistle,* 61 AD2d 380, app dsmd 44 NY2d 851; *Matter of Saunders v Saunders,* 60 AD2d 701). Moreover, psychological interviews and testing did not show either parent to be unfit, and there is no basis for any claim that plaintiff has not cared for her children in a proper manner.

In sum, there is an abundance of evidence in this record to support the determination of custody as made, and although the court's consideration of religion may be impermissible in this case, its analysis of the other factors, fully supported in the record, negates any implication that religion, as an issue, tainted the final determination of custody or caused an abuse of discretion by the court (see, e.g., *Martin v Martin, supra; Opferbeck v Opferbeck,* 57 AD2d 1074, mot for lv to app den 42 NY2d 810).

The order should be affirmed, with costs.

MAHONEY, P. J., CASEY, WEISS and LEVINE, JJ., concur.

Order affirmed, with costs.