OPINION OF THE COURT
Minna R. Buck, J.
Petitioner (hereinafter mother) initiated this proceeding on June 18, 1986, seeking an order declaring respondent the father of her child and awarding support. At the initial *664 appearance before the Hearing Examiner, the respondent (hereinafter father) admitted paternity, and filed a cross petition seeking joint custody of the child. The matter was referred to the intake Judge and, following appointment of a Law Guardian for the child and receipt of a social investigation, a hearing was held as to custody and visitation on October 16, 1986. (By the date of the hearing, a final order of support had been granted by the Hearing Examiner, based upon a stipulation of the parties.)
As developed on the record, the specific issues on which the parents disagree are (a) whether there should be joint custody or exclusive custody with mother, and (b) whether the child should have overnight visitation or custodial care, as the case may be, at the father’s home. Mother and father each agree that the other is a fit and loving parent, that the child should continue to reside with his mother with whom he has lived since birth, and that father should have an ongoing relationship with the child. What makes this request for joint custody unusual is not merely that the parents are not, and never have been, married to each other, but the chronology of pertinent events: The child was born on September 9, 1985. Mother and father had a continuing liaison (interrupted by a brief separation) from 1980 to March 1986. Father has been married since 1973 to his present wife; two children, now ages nine and four years old, were born in this marriage. In March 1986, mother met her present husband, whom she married on July 26, 1986.
One of the obvious questions posed by this scenario was responded to forthrightly by father’s wife. She acknowledged that she had been "upset” and "hurt” by the unfolding of events, and that these events, together with the tensions related to the court proceedings, had placed stress upon her marriage. She nevertheless insisted that her marriage was now "stronger than ever”, and that she had overcome her anger at the principals. She testified convincingly that she had never harbored hard feelings directed at the child and, since she had come to know him, that she felt affection toward him and was willing to include him in her family circle. Father and his wife both testified as to the warm relationship which was developing between their children and the infant.
Nevertheless, on this record, the court agrees with the recommendation of the Law Guardian that joint custody is not in the best interests of the child in this case, and that exclusive custody should be granted to mother. The guidelines *665 as to when joint custody is appropriate established thus far by the Court of Appeals (Braiman v Braiman, 44 NY2d 584; Matter of Sooy v Sooy, 64 NY2d 946) and applied to various factual situations (e.g., Nolan v Nolan, 107 AD2d 190; Matter of Blake v Blake, 106 AD2d 916; Matter of Worowski v Worowski, 95 AD2d 687; Bazant v Bazant, 80 AD2d 310) have all involved parents who were, or had been, married to each other and resided together for at least some period of time prior to the separation which preceded the custody battle. Only two cases have been found in New York involving the issue of joint custody between never married parents. In Matter of A. J. J. (108 Misc 2d 657), joint custody was collateral to the adoption proceeding and in any event was agreed to by both parties. In Bliss v Ach (86 AD2d 575, affd 56 NY2d 995), the Appellate Division reversed an award of joint custody to unmarried parents, relying on the guidelines enunciated in Braiman (supra) and finding that the necessity of consultation would exacerbate "sharp differences between the parents”.
No such sharp differences are presented here; on the contrary, both parents and father’s wife appear to be dealing with the ramifications of a potentially acrimonious situation in a relatively calm and reasoning manner. Nor does this court adopt the dictum in Bliss (supra) that an award of joint custody is "cosmetic” only, or without significant implications for the parents’ respective rights and obligations. However, although Braiman (supra) instructs that the ability of the natural parents to behave in a civilized fashion toward each other with respect to the decisions concerning the child’s upbringing is a necessary condition before an award of joint custody may be made, in this court’s view it is not sufficient. There should also be a showing of involvement and commitment to the child sufficient to provide at least the promise that the parent seeking joint custody will follow through with the obligations that entails over the long haul. In the present case, the unrebutted testimony of mother was that father, on learning of her pregnancy, promised to marry her; that he promised to, but did not comply with mother’s request that he participate in her prenatal care, including childbirth preparation classes, or be present at the birth of the child, or at the child’s baptism, or at the hospital when the child underwent surgery in January 1986. Father did not accept mother’s invitation to share time with the child during Thanksgiving and Christmas holidays in 1985. Although the court does not *666 question the sincerity of either father or his wife concerning their present feeling of affection and family bond with the child, the court notes that the child was not introduced to father’s immediate family until March 1986 and that, as of the date of the hearing, only two members of father’s very large and close extended family had met the child. Father did not contradict mother’s assertion that he had declined to give her his telephone number (and the court has taken notice of the fact that there is no listing in the current telephone directory for father’s residential or business telephone). Finally, although father made some voluntary payments of support for the child (amount unspecified), they were not made regularly prior to mother’s filing of the paternity petition.
Father’s stated reasons for seeking joint custody are also instructive, in the light of this background. He indicated willingness to allow mother to make all the decisions concerning the child’s education, religious instruction and medical care, but only wished to reserve the right to be consulted and seek a second opinion in the event of major medical decisions affecting the child. He also clearly wants to be assured of the right to visitation, including overnight visitation.
The record is silent as to any information concerning mother’s husband, or his views concerning his stepson, other than his awareness of the child’s paternity. The court has considered, but given no weight to, the custody agreement between the parties, executed in its final form without consultation by mother with her counsel, since it was entered into shortly before they severed their ongoing relationship with each other and did not address the circumstances presently before the court. Without passing judgment on the past conduct of the parties, it must be noted that the outcome of that conduct is that father, regardless of his present good intentions and efforts to unscramble the omelet, is left with multiple loyalties which may come into conflict. Mother, on the other hand, can more reasonably be heard to say that her primary loyalty is to this child.
Since New York law offers little specific guidance as to where "the best interests of the child” would lie in the present situation, the court has adopted the guidelines set forth in Minnesota Statutes Annotated (Minn Stats Ann, § 518.17 [2]):
"where * * * joint * * * custody is contemplated or sought, the court shall consider the following relevant factors:
*667 "(a) The ability of parents to cooperate in the rearing of their children;
"(b) Methods for resolving disputes regarding any major decision concerning the life of the child, and the parents’ willingness to use those methods; and "(c) Whether it would be detrimental to the child if one parent were to have sole authority over the child’s upbringing.”
Considering the record as a whole, it is the court’s conclusion that the stability, consistency and continuity which are desirable in the raising of a child, other factors being equal (Matter of Nehra v Uhlar, 43 NY2d 242), can best be assured by an award of custody to the mother. This is not to say that the child will not benefit from having a relationship with his father, especially since the parties agree on this point. The court finds that father should have reasonable visitation, but adopts the Law Guardian’s recommendation that overnight visitation should be postponed until the child is older. In view of the parents’ respective work arrangements, and the location of father’s summer camp, reasonable visitation should include but not be limited to the following:
Commencing on November 8 or 9, 1986 and alternate weekends thereafter, continuing through May 1987, one day each weekend (Saturday or Sunday, as the parties agree) from 10:00 a.m. through 7:00 p.m.; commencing June 1987 through May 1988, one of the alternate weekend visitations shall run from Saturday at 10:00 a.m. through Sunday at 7:00 p.m.; thereafter, alternate weekends from Saturday at 10:00 a.m. through Sunday at 7:00 p.m.
Commencing immediately upon service of an order hereunder, and continuing through June 1987, an additional six-hour period each week, on 48 hours’ prior notice; commencing July 1987, one such mid-week visit each month shall be extended to include overnight visitation;
Father’s Day from 1:00 p.m. to 7:00 p.m., and at least two hours on the child’s birthday, in the event these dates do not fall on a regularly scheduled visit. (Scheduled weekend visitation shall be adjusted to permit the child to spend Mother’s Day with mother.)
Commencing in August 1987, one week’s uninterrupted summer vacation, on at least 45 days’ notice; commencing August 1988, two weeks’ uninterrupted summer vacation, with similar notice. (Scheduled weekend visitation shall be *668 adjusted to permit mother to spend two uninterrupted weeks’ vacation with the child, on 45 days’ prior notice to father.)
Up to four hours on Easter, Thanksgiving and, until 1987, on Christmas Day or Christmas Eve, as the parties may agree; thereafter, the parties shall alternate Christmas Eve (including overnight until 10:00 a.m. the following day) and Christmas Day. Commencing in July 1987, any holiday observed on either a Friday preceding or Monday following a scheduled weekend visit shall be included as part of that weekend visit.
There should also be such other visitation as the parties may agree. The parties shall keep each other advised of any changes in their respective addresses, and father shall advise mother of the address and telephone number of any location where visitation is to occur. Mother shall advise father as to the child’s medical providers and schools, and shall authorize father’s access to school and medical records and reports.