JEFF VOELKER, Respondent, v KATHLEEN A. KEPTNER, Also Known as KATHLEEN GALLAGHER, Appellant.—Order modified on the law and as modified affirmed with costs, in accordance with the following memorandum: In this proceeding petitioner father sought a change of custody of his out-of-wedlock child from respondent mother, who has been the custodial parent of the child since birth. Petitioner requested an order of joint custody with increased visitation. No allegations were made in the petition that respondent, who is now married to a third party, was unfit. To the contrary, petitioner concedes that the child is presently well cared for. His request for joint custody was based solely on his interest in becoming more involved in the child's upbringing. In our view, Family Court, in granting the father's petition, erroneously construed Domestic Relations Law § 240 as requiring an order of joint custody unless good cause can be shown which militates against such order. In this regard, the court stated, "[t]he respondent [mother], on the other hand, must come to grips, as this court perceives it, with the fact that although this child was born to her out-of-wedlock and has resided for its entire two years with her, the law states that neither parent has a prima facie right to custody" and thereafter concluded that absent a compelling showing to the contrary, which it did not find in this case, it would order joint custody. Section 240 states that neither parent has a prima facie right to custody; it does not mean that parents have the right to joint custody in the absence of countervailing factors. Joint custody is not to be favored and, as the Court of Appeals stated in *Braiman v Braiman* (44 NY2d 584, 589-590), is primarily encouraged "as a voluntary alternative for relatively stable, amicable parents behaving in mature civilized fashion". There is no voluntary

consent in this case and disagreements over the child's upbringing with regard to religion and education already exist between the parents. Given these circumstances, Family Court's award of joint custody is not in the child's best interests. Based on our review of the record, we conclude that the best interests of the child would be served by continuing custody with respondent, with additional visitation rights, as awarded by Family Court, to petitioner.

All concur, except Balio and Davis, JJ., who dissent and vote to affirm, in the following memorandum.

Balio and Davis, JJ. (dissenting). The principal issue on this appeal is whether Family Court abused its discretion in granting the natural father's petition for joint custody of his out-of-wedlock child. In our view, the majority has misdescribed Family Court's analysis of this issue and by making its own findings regarding the best interest of the child, has failed to accord proper weight to the discretionary determination of the hearing court. We, therefore, respectfully dissent.

It was the common-law rule that the natural mother of an out-of-wedlock child had a prima facie right to custody of the child and, if she was a proper and suitable parent, was entitled to an award of custody as against the natural father *(see, People ex rel. Meredith v Meredith,* 272 App Div 79, 82, *affd* 297 NY 692; 4 Foster-Freed-Brandes, Law and the Family New York, Child Custody and Visitation, § 1:14 [b] [2d ed]). That rule no longer applies, however, as it is the declared policy of this State that "[i]n all cases there shall be no prima facie right to the custody of the child in either parent" (Domestic Relations Law § 70 [a]; § 240 [1]; *see also,* Tippins, New York Matrimonial Law and Practice § 17:03; 2 Kerschensteiner, Callaghan's Family Court Law and Practice in New York, § 15:14 [rev ed 1984]). The paramount consideration in every case is the best interest of the child and what will best promote the child's welfare and happiness (Domestic Relations Law §§ 70, 240; *Friederwitzer v Friederwitzer,* 55 NY2d 89). Thus, whether joint custody of an out-of-wedlock child should be awarded to the natural parents is governed by the same principles and considerations applicable to joint custody decisions concerning a child of a marriage *(see, Matter of Cheryl A. D. v Jeffrey G. O.,* 133 Misc 2d 663, 664-665; *Matter of A.J.J.,* 108 Misc 2d 657, 660).

The general principles governing awards of joint custody are well established. Such a custodial arrangement is appropriate where stable and amicable parents desire to share in the physical and psychological upbringing of their child and have

demonstrated that they are able to cooperate in a mature civilized fashion on those matters impacting upon the child's best interest *(see, Braiman v Braiman,* 44 NY2d 584, 589; *Matter of Jones v Jones,* 92 AD2d 632; *Bazant v Bazant,* 80 AD2d 310, 313-314). Joint custody, however, should not be imposed upon embattled and embittered parents who appear unable to put aside their differences for the benefit of their child *(see, Braiman v Braiman, supra; Matter of Sooy v Sooy,* 101 AD2d 287, 288-289, *affd sub nom. Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946; *Seago v Arnold,* 91 AD2d 835, 836, *lv dismissed* 59 NY2d 761). As a result, joint custody is more apt to gain judicial approval where the parties agree to share the responsibility for their child's upbringing. This does not mean, however, that there is a presumption against joint custody or that voluntary consent is a *sine qua non* for a judicial award of joint custody. Indeed, where the record demonstrates that the parents are not hostile or embittered, the Court of Appeals, this court and the other appellate departments have approved awards of joint custody irrespective of the fact that the parents did not consent to, or agree upon, that arrangement *(see, for example, Matter of Jones v Jones,* 65 NY2d 649; *Anastasia v Anastasia,* 100 AD2d 740 [4th Dept]; *Bazant v Bazant,* 80 AD2d 310, *supra* [4th Dept]; *Guarnier v Guarnier,* 155 AD2d 744 [3d Dept]; *Mary M. v Albert J. M.,* 154 AD2d 354 [2d Dept]; *Matter of Venable v Venable,* 122 AD2d 374 [3d Dept]; *Matter of Martin v Martin,* 113 AD2d 943 [2d Dept]; *Taylor v Taylor,* 109 AD2d 709 [1st Dept]). These cases reflect the principle that the primary concern is the best interest of the child, not whether the parties have reached a voluntary agreement.

It is well established that a custody determination should not be disturbed where there exists a substantial basis in the record to support it and that the findings of the hearing court must be accorded the greatest respect *(see, Eschbach v Eschbach,* 56 NY2d 167, 173; *Matter of Irene O.,* 38 NY2d 776, 777; *Bazant v Bazant,* 80 AD2d 310, 313, *supra).* The record in this case overwhelmingly supports the court's award of joint custody. The natural father sought joint custody of, and expanded rights of visitation with, his out-of-wedlock child. The petition did not request a change of any agreement on, or court award of, custody and did not seek to disturb the natural mother's primary physical custody; the father merely sought a voice in the education, religion and upbringing of the child, i.e., joint legal custody. Although the majority state that the mother did not voluntarily consent to that request, she testified at the

hearing that she wanted the father to be consulted on medical and educational matters and that she has always wanted him to be involved in their son's life. The father has exercised visitation with the child since birth and is supporting the child. The record indicates that both parents love and can care for their son; that they can communicate with each other in a mature and respectful manner; and that they appear willing to reach compromises that will best serve the interests of their son. The only specific area of past disagreement concerned the religious differences of the parties and even on this point, the father has agreed that the child be raised in the mother's religion, and the parties have indicated a desire to approach future issues in a spirit of cooperation. Additionally, an award of joint custody and expanded rights of visitation was recommended by the probation officer, who conducted a thorough investigation, and by the Law Guardian.

Family Court did not misapply or misconstrue section 240 of the Domestic Relations Law. The court began its analysis by finding "that both parties are well-brought-up, well-educated, 'upwardly mobile' and intelligent individuals, coming from similar socio-economic and geographical backgrounds, both of whom love the infant of their union; either of whom could more than adequately provide a secure, economically advantageous, healthy and loving upbringing for the child; that is not in dispute." The court then quoted at length from *Braiman v Braiman (supra,* at 589-590) and then found, "In all that is before it this court does not find the referred to 'embattled and embittered' parents characterized in the cases where joint custody was not allowed." The court then found that the parents do not have such serious divisions that would jeopardize the child's stability; that no greater conflict existed that would prevail between a husband and wife residing in the same household; and that "petitioner and respondent can make those necessary compromises when they begin to think of the best interest of this child." The court acknowledged that "the law states that neither parent has a prima facie right to custody. (See Section 240 of the Domestic Relations Law)." The court next discussed the First Department's decision in *Trapp v Trapp* (136 AD2d 178) which held that even where joint custody would be inappropriate, decisions regarding religion and citizenship are joint matters which ought not to be reposed in either parent absent compelling circumstances. Family Court commented that "[t]his court likewise fails to find such a 'compelling showing to the contrary' in the instant case before it." The court clearly followed the govern-

ing statutory and decisional law regarding joint custody and merely concluded that a sole disagreement over religion, absent compelling circumstances, was not a sufficient basis for the denial of joint custody. That view is consistent with decisional law *(see, Trapp v Trapp,* 136 AD2d 178, 183, *supra)* and does not amount to applying a presumption in favor of joint custody.

We conclude that Family Court properly exercised its discretion in granting joint custody and in expanding the father's visitation rights, and we would affirm that determination *(see, Bazant v Bazant,* 80 AD2d 310, *supra; Matter of A.J.J.,* 108 Misc 2d 657, *supra).* (Appeal from order of Herkimer County Family Court, LaRaia, J.—custody.) Present—Callahan, J. P., Green, Balio, Lawton and Davis, JJ.