(August 2, 2001)

■ Arnold J. Mars, Appellant, v Andrea R. Mars, Respondent. [729 NYS2d 20] —Judgment, Supreme Court, New York County (Elliott Wilk, J.), entered March 16, 2000, which, insofar as appealed from, as limited by the briefs and by plaintiff-appellant's post-submission letter dated January 31, 2001, directed plaintiff to pay defendant $70,000 as a non-taxable distributive award pursuant to the parties' pre-nuptial agreement; awarded defendant the reasonable cost of child care; and vested all final decision-making authority regarding the children in defendant, while requiring her first to consult with plaintiff concerning significant decisions, except in emergencies, unanimously modified, on the law and the facts, to the extent of vacating the provision that plaintiff reimburse defendant for the reasonable cost of child care upon documentation of same; vacating the provision vesting defendant with final decision-making authority in all areas to the extent of vesting plaintiff with final decision-making authority in the areas of the children's religious upbringing and dental care; and otherwise affirmed, without costs.

The parties were married on November 19, 1992, when plaintiff was 43 and defendant was 36. The marriage produced two children: Jonah, born July 24, 1993, and Lily, born July 22, 1995. The parties separated in August 1997, and this action, in which each party sought a judgment of divorce, was commenced the same month.

Prior to the marriage, the parties entered into a September 1992 "Agreement in Contemplation of Marriage," which provides, *inter alia*, as pertinent to this appeal that the "only monies, assets or things of value" defendant would receive from plaintiff would be a payment comprising $30,000 for the first year of marriage and an additional $10,000 for each subsequent year or part of a year thereafter.

The agreement also required plaintiff to deposit the monies to be paid to defendant (i.e., the $30,000 plus $10,000 for each additional year of marriage) into a savings bank account, payable on plaintiff's death to defendant and requiring both parties' signatures for withdrawals prior to his death, according to the following schedule: (1) $30,000 within one month after the first day of the marriage; and (2) $10,000 per year thereafter for the duration of the marriage.

The parties dispute whether plaintiff has made the payments (totaling $70,000, based on the duration of the marriage) required by the pre-nuptial agreement. However, since plaintiff failed to document his alleged payments and the issue was purely one of credibility, there is no occasion to second guess the trial court's finding that plaintiff "has not proven that any of that amount has been satisfied" or its award to defendant of "the full amount, pursuant to the formula."

Also, since defendant is, by her own account, a full-time mother who has no plans to return to the workforce, and Domestic Relations Law § 240 (1-b) (the Child Support Standards Act [CSSA]) authorizes an award for child care only where the custodial parent is working or receiving work-related education or training (Domestic Relations Law § 240 [1-b] [c] [4]) or seeking work (Domestic Relations Law § 240 [1-b] [c] [6]), the award for child care expenses, apparently for a full-time nanny, is vacated.

The court also vested all decision-making authority in defendant based on its view that plaintiff "is abusive, controlling and has no decent respect" for defendant's opinions or judgment. While this statement appears to have support in the record, the same could be said of defendant's attitude toward plaintiff. As attested to by the court-appointed psychiatric expert and the children's guardian ad litem, both parties are "impulsive," "have poor judgment," and "each is so centered on obtaining goals or advantages for himself or herself, that all their supposed concern for the best interests of their children may disappear when it conflicts with their own needs."

It is undisputed that each parent takes an active interest in the children's lives and that it is in the children's best interest that both parents remain involved with them, notwithstanding the parents' present intolerance for each other. Under these circumstances, the trial court should not have vested all decision-making authority in one parent in a situation where it appears that neither parent can be trusted not to obstruct the other's relationship with the children.

While there is significant precedent for dividing decision-

making between parents, we are aware of no precedent for completely depriving a non-custodial parent, who is otherwise to remain fully involved with the children's lives, of decision-making authority in all areas. Thus, although we do not think that such authority should necessarily be divided between the parties equally, we feel that the children's interests are best served by giving plaintiff decision-making authority over the children's religious upbringing—an area in which plaintiff apparently takes a greater interest than does defendant—and over their dental treatment, in recognition of his professional expertise. Like plaintiff, defendant is required to consult with the other parent concerning significant decisions in his areas of authority.

Finally, despite plaintiff's post-submission withdrawal of that part of his appeal from the trial court's award of child support and its award to defendant of exclusive occupancy of the marital apartment, we note that the trial court incorrectly determined plaintiff's liability for child support without engaging in either a calculation using the statutory child support percentage or a detailed analysis of the factors enumerated under Domestic Relations Law § 240 (1-b) (f). The explanation the court gave in its decision for departing from the statutory method was simply that "[r]eference to the guidelines to determine additional child support would serve little purpose in this case." However, even defendant's counsel concedes in her brief that "when the Court below rejected the amount derived from the statutory formula, it should have set forth that amount in its written order."

While the trial court's approach may have been proper under the purely discretionary child-support system that preceded its adoption, the CSSA was intended to replace the prior discretionary system with one affording "greater uniformity, predictability and equity in fixing child support awards." (*Matter of Cassano v Cassano*, 85 NY2d 649, 652 [citing Bill Jacket materials].) The Court of Appeals has held that CSSA requires the trial court to follow a three-step method for determining the basic child support obligation: (1) calculation of combined parental income; (2) multiplication of the combined parental income, up to $80,000, by the specified child support percentage, and allocation between the parents on a pro rata basis, unless application of the percentage is deemed "unjust or inappropriate" on consideration of the factors set forth in paragraph (f), as articulated in a written order (Domestic Relations Law § 240 [1-b] [g]); and (3) for the amount of combined parental income over $80,000, application either of the child support

percentage or of the "paragraph (f)" factors, and articulation of the reasons for the method used (whether the percentage or the factors) (*Bast v Rossoff*, 91 NY2d 723, 726-727; *Matter of Cassano v Cassano, supra*, 85 NY2d 649, 652-655). Concur—Sullivan, P. J., Andrias, Wallach, Saxe and Friedman, JJ.