Matter of Joseph XX. v Jah-Rai YY. (2024 NY Slip Op 00950)

Matter of Joseph XX. v Jah-Rai YY.

2024 NY Slip Op 00950

Decided on February 22, 2024

Appellate Division, Third Department

Reynolds Fitzgerald, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 22, 2024

535537

[*1]In the Matter of Joseph XX., Appellant- Respondent,
v
Jah-Rai YY., Respondent- Appellant. (And Six Other Related Proceedings.)

Calendar Date:December 13, 2023

Before: Garry, P.J., Lynch, Reynolds Fitzgerald, McShan and Mackey, JJ.

Ellen Bennett Becker, Albany, for appellant-respondent.
Amanda FiggsGanter, Albany, for respondent-appellant.
Karen R. Crandall, Schenectady, attorney for the child.

Reynolds Fitzgerald, J.
Cross-appeals from an order of the Family Court of Albany County (Susan M. Kushner, J.), entered May 12, 2022, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2018). Pursuant to a July 2020 order entered on consent, the parties shared joint legal custody and equal parenting time, with designated sharing of Christmas, New Year's, Mother's and Father's Day and Thanksgiving Day holidays and the child's birthday. The remaining single-day holidays were to be equally shared, as mutually agreed upon.[FN1] In August 2020, the father commenced the first of these proceedings by filing two violation petitions alleging that the mother failed to bring the child to his scheduled parenting time and that she would not agree to equally sharing the single-day holidays. The father also filed a modification petition seeking a specified sharing of the single-day holidays. Thereafter, the mother filed three violation petitions alleging that the father brought the child to a public beach during the COVID-19 pandemic without informing her and brought the child to his religious services. The mother also filed a modification petition seeking final decision-making authority when the parties are unable to agree and the addition of a provision prohibiting the father from introducing the child to any religion until the child is 13 years old.
After a combined fact-finding hearing, Family Court, in a May 2022 order, dismissed all of the mother's violation petitions and the father's violation petition alleging that the mother failed to agree to single-day holidays. The court did find, however, that the mother willfully violated the 2020 order by refusing the father's parenting time.[FN2] Further, Family Court found a change in circumstances and, after considering the best interests of the child, as relevant to this appeal, continued joint legal custody, but also directed the parties to attend and participate in coparenting counseling to address the issues of religion, good faith cooperation on joint legal questions and ways to coparent more effectively, and prohibited the parties from allowing the child to attend religious services or instruction until an agreement is reached. It further ordered that in the event that an agreement regarding the child's religion was not reached after the parties had engaged in a minimum of 20 coparenting sessions, said failure would constitute a change in circumstances allowing either party to petition the court for modification of the order. The father and the mother cross-appeal.
"The proponent of a violation petition must establish, by clear and convincing evidence, that there was a lawful court order in effect with a clear and unequivocal mandate, that the person who allegedly violated the order had actual knowledge of the order's [*2]terms, that the alleged violator's actions or failure to act defeated, impaired, impeded or prejudiced a right of the proponent and that the alleged violation was willful" (Matter of Timothy RR. v Peggy SS., 206 AD3d 1123, 1124 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Aaron K. v Laurie K., 187 AD3d 1423, 1424 [3d Dept 2020]). "This Court will accord deference to Family Court's credibility findings, and the determination of whether to hold a party in contempt will generally not be disturbed absent an abuse of discretion" (Matter of Clint Y. v Holly X., 217 AD3d 1069, 1070 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Craig K. v Michelle K., 218 AD3d 977, 978 [3d Dept 2023]). With respect to the parties' petitions to modify the 2020 order, a parent "must first show that a change in circumstances has occurred since the entry of the existing custody order that then warrants an inquiry into what custodial arrangement is in the best interests of the child. Only after this threshold hurdle has been met will the court conduct a best interests analysis" (Matter of Nicole B. v Franklin A., 210 AD3d 1351, 1353 [3d Dept 2022] [internal quotation marks and citations omitted], lv dismissed 39 NY3d 1092 [2023]; see Matter of Antonio MM. v Tara NN.,191 AD3d 1196, 1197 [3d Dept 2021]). "Family Court's credibility assessments and factual findings will not be disturbed as long as they have a sound and substantial basis in the record" (Matter of Nelson UU. v Carmen VV., 202 AD3d 1414, 1415 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Erick RR. v Victoria SS., 206 AD3d 1523, 1525 [3d Dept 2022]).
The mother contends that Family Court abused its discretion in finding that she willfully violated the 2020 order. At the fact-finding hearing, both parties testified and the mother submitted documentary proof. The mother also proffered the testimony of two private investigators and the maternal grandmother. The mother concedes that she withheld the child from the father in August 2020 but did so out of concern about COVID-19, and only after the father advised her that he intended to travel out of state with the child. The record confirms this. Under these circumstances, we would not characterize the violation as willful. That said, Family Court appropriately determined that the father was entitled to make-up time (see Matter of David JJ. v Verna-Lee KK., 207 AD3d 841, 844 [3d Dept 2022]; Matter of Nelson UU. v Carmen VV., 202 AD3d at 1416).[FN3]
The mother also contends that Family Court abused its discretion in dismissing her violation petitions. As the proponent of the violation petitions, the mother was obliged to establish that there was a lawful court order in effect with a clear and unequivocal mandate. Here, the 2020 order does not contain a prohibition restricting the father from taking the child to religious services or to a public beach, nor does it contain any COVID[*3]-19 restrictions. Although the mother implies that joint legal custody gives her an equal right in determining whether the child should be taken to a public beach during COVID-19 or to religious services, and that the father's actions violated the order's mandate of joint legal custody, the order does not contain a clear and unequivocal mandate restricting the father from partaking in such activities. As such, we find that Family Court properly dismissed the mother's violation petitions (see Matter of Clint Y. v Holly X., 217 AD3d at 1071; Matter of Sandra R. v Matthew R., 189 AD3d 1995, 2000 [3d Dept 2020], lv dismissed & denied 36 NY3d 1077 [2021]).
Turning to Family Court's determination to modify the 2020 order, contrary to the father's contention, the court did not base its finding that there had been a change in circumstances solely on the parties' failure to agree as to the religious upbringing of the child. Rather, Family Court found a change in circumstances based on the parties' inability to reasonably function as joint custodians for a myriad of reasons, citing specifically to each parent making unilateral choices without consulting or obtaining the approval of the other parent, their failure to respect one another and unwillingness to compromise at all on their individual views as to religion and the child, their indifference to each other's concerns with the child's health issues and their inability to agree on sharing parenting time for the single-day holidays or the child's birthday, leading to continuous disputes, disagreements and police involvement. Given the foregoing, we agree that Family Court properly found a change in circumstances was established, as the parties' ongoing conflict resulted in the parents' inability to effectively communicate and cooperatively work together (see Matter of Alexis WW. v Adam XX., 220 AD3d 1094, 1096 [3d Dept 2023]; Matter of Virginia OO. v Alan PP., 214 AD3d 1045, 1047 [3d Dept 2023]).
The father also contends that Family Court erred in directing the parties to attend coparenting counseling and in prohibiting either parent from permitting the child to attend religious services or instruction until an agreement is reached. The mother asserts that Family Court erred in not granting her final decision-making authority. It is well settled that a court may direct a party to engage in coparenting counseling, or other treatment, as a component of a court's custody order (see Matter of Thompson v Wood, 156 AD3d 1279, 1285 [3d Dept 2017]; Matter of Remillard v Luck, 2 AD3d 1179, 1180 [3d Dept 2003]; Matter of Mongiardo v Mongiardo, 232 AD2d 741, 743[3d Dept 1996]; Matter of Dennison v Short, 229 AD2d 676, 677 [3d Dept 1996]). Here, Family Court did not alter the parties' shared custodial arrangement and continued joint legal custody while simultaneously directing the parties to participate in coparenting counseling to assist the parties in coparenting more effectively. Upon this record, we also find [*4]no error in Family Court declining to give the mother final decision-making authority. The coparenting counseling directive, in which neither parent is given the "last word," represents a permissible directive and is fully supported by the evidence (see Matter of Mongiardo v Mongiardo, 232 AD2d at 743-744; Matter of Sweet v Passno, 206 AD2d 639, 640 [3d Dept 1994]).
However, we take a different view with respect to Family Court's various directives pertaining to religion. While a court may consider religion as a factor in determining the best interests of a child in custody disputes, "it alone may not be the determinative factor" (Aldous v Aldous, 99 AD2d 197, 199 [3d Dept 1984], appeal dismissed 63 NY2d 674 [1984], cert denied 469 US 1109 [1985]; see Cohen v Cohen, 177 AD3d 848, 850-851 [2d Dept 2019], appeal dismissed 35 NY3d 947 [2020]). Additionally, cases that do consider religion as a factor generally fall into three separate categories: (1) when a child has developed actual religious ties to a specific religion and one parent is better able to serve those needs; (2) a religious belief violates a state statute; and (3) when a religious belief poses a threat to the child's well-being (see Aldous v Aldous, 99 AD2d at 199). This standard, enunciated in 1984, continues to be followed (see Cohen v Cohen, 177 AD3d at 851; Matter of Gribeluk v Gribeluk, 120 AD3d 579, 579 [2d Dept 2014]; Matter of VanDusen v VanDusen, 39 AD3d 893, 894-895 [3d Dept 2007]).
None of the three categories outlined in Aldous are applicable to the case before us. The July 2020 consent order granted the parties joint legal custody with equal parenting time. Notably, no reference is made to religion in the custody order. At the time the petitions were filed, the child was not quite two years old and, as such, not of an age so as to allow him to have developed actual religious ties to a specific religion. Nor does the record reveal that the father's religious beliefs violated a state statute or threatened the child's well-being. As a result, Family Court improperly intervened in the parties' religious dispute (cf. Matter of Gago v Acevedo, 214 AD2d 565, 566-567 [2d Dept 1995], lv denied 86 NY2d 706 [1995]). Thus, the court's directives to the parties that neither parent shall permit the child to attend religious services or instruction until an agreement between the parties is reached on this issue, to address the issue of religion while participating in court-ordered coparenting counseling, and that a failure to reach an agreement with regard to religion will — after completing the court-ordered number of coparenting sessions — constitute a change in circumstances for purposes of modification, were issued in error and should be vacated.
Garry, P.J., Lynch and Mackey, JJ., concur.
McShan, J. (concurring in part and dissenting in part).
I agree with my colleagues' decision concerning the vacatur of the willfulness finding of the violation petition against respondent (hereinafter [*5]the mother) and the dismissal of the violation petitions against petitioner (hereinafter the father). However, I write to respectfully dissent from the majority's determination that Family Court improperly intervened in the conflict between the parties concerning the child's religious upbringing. To this point, the significance of the parties' disagreement on this core issue implicates their ability to coparent the child and, necessarily, the viability of their agreed-upon joint legal custody arrangement. On the record before us, the continuation of the current custody arrangement, absent some mechanism to revisit its terms in the event that the parties cannot compromise on the child's religious upbringing, is inappropriate.
The gravamen of the dispute between these parties is not which religion the parties' child should or should not be exposed to but, rather, the age at which the child should be exposed to any organized religion. The mother's modification petition expressly sought Family Court's intervention as to this specific issue, and Family Court is empowered to make findings and a determination as to whether attendance at such services would be harmful to the child (see Matter of Bentley v Bentley, 86 AD2d 926, 927 [3d Dept 1982]). Although the dispute as to the child's religious upbringing cannot be the sole factor underlying a best interests determination (see Matter of Gribeluk v Gribeluk, 120 AD3d 579, 579 [2d Dept 2014]; Matter of Gago v Acevedo, 214 AD2d 565, 566 [2d Dept 1995], lv denied 86 NY2d 706 [1995]), the circumstances here warranted a determination on this significant issue and, in the context of the myriad disagreements between the parties, whether the joint custody arrangement could persist. In my view, the requirement as to harm may be met by the parties' vociferous disagreement on this specific issue, which reflects the need for compromise or, if that is not possible, for one view to prevail, in order to prevent harm to the child (see Matter of Bentley v Bentley, 86 AD2d at 927 ["Family Court was well within its broad discretionary power in reaching its determination that the best interests of these children dictate that they be reared in only one religion"]; see also Matter of Scialdo v Kernan, 14 AD3d 813, 815 [3d Dept 2005]; Lebovich v Wilson, 155 AD2d 291, 292 [1st Dept 1989]; Spring v Glawon, 89 AD2d 980, 981 [2d Dept 1982]; compare Matter of De Luca v De Luca, 202 AD2d 580, 581 [2d Dept 1994]). To this end, the majority's decision to vacate Family Court's specific condition pertaining to the child's attendance at religious services or instruction has the practical effect of providing that authority to the father and, considering the substance of the hearing transcript, does so without the benefit of any relevant testimony on such an important and disputed issue. In this respect, the lack of any conditions or compromise pertaining to religion in the order [FN4] all but encourages the father to fully immerse the child in [*6]his religion such that the next time a court considers the issue, which seems likely, that factor will inure to his favor (see Cohen v Cohen, 177 AD3d 848, 851 [2d Dept 2019], appeal dismissed 35 NY3d 947 [2020]; Matter of Gribeluk v Gribeluk, 120 AD3d at 579; compare Matter of Waldron v Dussek, 48 AD3d 471, 473 [2d Dept 2008]). The mother's position with respect to her desire to wait until the child is older before exposing him to a formal religion is entitled to the same consideration as if she were advocating for his upbringing in a different religion altogether. Although her desire may not ultimately be in the child's best interests, the majority's decision disregards it entirely without a sufficient basis for doing so.
Ultimately, I believe Family Court's efforts to continue the joint legal custody by requiring the parties to complete the coparenting counseling pertaining to the child's religious upbringing were permissible in light of the potential for harm to the child that will likely result from leaving this issue unresolved. However, rather than imposing the condition with an indefinite period, I would have set a six-month limit to complete such counseling to provide the parties with reasonable expectations as to the timing for resolution of this issue. That being said, the passage of time has likely rendered such relief impossible. Thus, rather than attempting to avoid the issue concerning the child's religious upbringing, I would remand for a hearing to develop a more complete record concerning the best interests of the child and ultimately resolve that core issue. To this end, my view is that Family Court's findings, and the record in total, suggest that the persistent disagreement over the child's religious upbringing, coupled with various other coparenting issues, is reflective of their inability to coparent effectively and has arguably rendered the present joint custodial arrangement untenable (compare Matter of Morin v Stancu, 309 AD2d 1035, 1037 [3d Dept 2003]; Matter of Darrow v Burlingame, 298 AD2d 651, 652 [3d Dept 2002]).[FN5] Thus, if the parties continue demonstrating an inability to coparent effectively and amicably, it will be necessary to grant one parent custody or, at the very least, decision-making authority over the child's religious upbringing (see Matter of Ann D. v David S., 128 AD3d 520, 520 [1st Dept 2015]; Mars v Mars, 286 AD2d 201, 203 [1st Dept 2001]; Voelker v Keptner, 156 AD2d 1014, 1014-1015 [4th Dept 1989]; Lebovich v Wilson, 155 AD2d at 292; Mester v Mester, 58 Misc 2d 790, 794 [Sup Ct, Nassau County 1969]).
ORDERED that the order is modified, on the law and the facts, without costs, by reversing so much thereof as granted petitioner's violation petition and by vacating all findings and directives referencing religion as set forth above; said violation petition dismissed; and as so modified, affirmed.

Footnotes

Footnote 1: These holidays include Memorial Day, Martin Luther King Day, Labor Day, Washington's birthday, Columbus Day, 4th of July, Easter, Good Friday and Halloween.

Footnote 2: Family Court ordered that the father have make-up time with the child.

Footnote 3: Family Court subsequently issued an order directing that the father have specific make-up parenting time on February 17-20, 2023. Presumably, the make-up time occurred as scheduled.

Footnote 4: To this end, at the hearing, the attorney for the child suggested that Family Court allow the father to take the child to church but not engage in "any sort of major sacraments or religious education without the parties agreeing." While Family Court opted to allow the parties to attempt to come to some compromise on their own, the possibility of fashioning appropriate conditions is present.

Footnote 5: Buttressing this point, since the date of Family Court's order, a bevy of petitions have been filed by the mother, the father and the maternal grandmother concerning all manner of issues pertaining to custody and visitation, which reflects the persistence of the parties' various disputes.