Daᴠɪᴅ V. Fox, Appellant, v Jo Eʟʟᴇɴ Fox, Respondent.

Fourth Department, March 13, 1992

APPEARANCES OF COUNSEL

*Andrew J. Cohen (Alfred Heilman* of counsel), for appellant.

*David J. Morris* for respondent.

### OPINION OF THE COURT

BALIO, J.

The parties physically separated in September of 1986. At that time, defendant mother left the marital residence. The two children of the marriage, a daughter five years of age and a son 10 months old, remained with the father in the marital residence. The parties were divorced in August of 1987. The judgment of divorce incorporated without merger the parties' stipulation providing for joint custody of their two children, with primary physical custody to remain with the father and liberal visitation privileges to the mother. In August 1991, Supreme Court granted the mother's motion for a change of primary physical custody.

The party seeking a change of custody "bears a heavy burden of proof that the change contemplated is in the child's best interests" *(Collins v Collins,* 115 AD2d 979). Among the factors or circumstances to be considered in ascertaining the child's best interests are: (1) the continuity and stability of the existing custodial arrangement, including the relative fitness of the parents and the length of time the present custodial arrangement has continued; (2) quality of the child's home environment and that of the parent seeking custody; (3) the ability of each parent to provide for the child's emotional and intellectual development; (4) the financial status and ability of each parent to provide for the child; (5) the individual needs and expressed desires of the child; and (6) the need of the child to live with siblings *(see, Matter of Louise E.S. v W. Stephen S.,* 64 NY2d 946; *Eschbach v Eschbach,* 56 NY2d 167, 172-173; *Matter of Nehra v Uhlar,* 43 NY2d 242, 250-251; *Matter of Ebert v Ebert,* 38 NY2d 700, 702-704; *Matter of Blake v Blake,* 106 AD2d 916).

The preexisting custodial arrangement, whether established by agreement or order, is a weighty factor, and the existing arrangement should be changed based only upon

" 'countervailing circumstances on consideration of the totality of circumstances' " *(Friederwitzer v Friederwitzer,* 55 NY2d 89, 95). The priority accorded the existing arrangement reflects the view that custody of children should be established on a long-term basis, wherever possible, and that "children should not be shuttled back and forth between divorced parents merely because of changes in marital status, economic circumstances or improvements in moral or psychological adjustment" *(Obey v Degling,* 37 NY2d 768, 770; *see also, Matter of Nehra v Uhlar,* 43 NY2d 242, 251, *supra; Keating v Keating,* 147 AD2d 675, 677, *lv dismissed* 74 NY2d 791; *Martin v Martin,* 74 AD2d 419, 426). Thus, a long-term custodial arrangement established by agreement should prevail "unless it is demonstrated that the custodial parent is unfit or perhaps less fit" *(Martin v Martin, supra,* at 426; *see also, Obey v Degling, supra,* at 770; *Alan G. v Joan G.,* 104 AD2d 147, 153), and such established custodial arrangement should not be changed solely to accommodate the desires of the child *(see, Matter of Ebert v Ebert,* 38 NY2d 700, 703, *supra).*

In the instant case, it is clear that the trial court changed custody of both children because of the "strong desires" of the 10-year-old daughter to live with her mother and because of the close relationship between the siblings. This was improper. A child of 10 or 11 years of age generally is not of sufficient maturity to weigh intelligently the factors essential to making a wise choice as to custody *(Matter of Robert T.F. v Rosemary F.,* 148 AD2d 449, 452; *Feltman v Feltman,* 99 AD2d 540, 541; *Matter of Hahn v Falce,* 56 Misc 2d 427, 435). Moreover, the trial court acted without the benefit of an investigative report and without the testimony of teachers, counselors, psychologists or other experts *(see, Matter of Mead v Mead,* 143 AD2d 454; *Matter of Calder v Woolverton,* 50 AD2d 587, *affd* 39 NY2d 1042; *Matter of Barry v Glynn,* 59 Misc 2d 75 [child's preference given effect where supported by expert testimony of psychologist and detailed probation reports]). The record, therefore, is devoid of evidence that this 10 year old is possessed of exceptional judgment or maturity to decide her custodial fate or that her strong preference to be with her mother is in her best interests.

Ordinarily, the custody determination of the trial court is entitled to great deference *(see, Eschbach v Eschbach,* 56 NY2d 167, 173, *supra; Martin v Martin,* 74 AD2d 419, 425, *supra).* Such deference is not warranted, however, where the custody determination lacks a sound and substantial basis in

the record *(see, Keating v Keating,* 147 AD2d 675, 677, *supra; Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76). In the instant case, the trial court, by effectively permitting the 10-year-old daughter to dictate the custody arrangement for herself and her brother, failed to weigh properly all of the factors and circumstances bearing on the children's best interests. We further conclude that those factors other than the weighty, but not conclusive, circumstances of the existing custodial arrangement, do not demonstrate "countervailing circumstances" supporting a change of custody. Accordingly, the order should be reversed.

There is no question that the daughter has expressed a strong preference to reside with her mother. The daughter expressed discontent with the fact that her grandmother talked poorly of her mother and that she had chores to do for her grandmother. The grandmother's reference to the mother was one isolated event, however, and the importance of this event was discounted by the Law Guardian. The father is somewhat conservative in attitude and approach, and it is evident that he is the more strict disciplinarian. Unfortunately, there is no expert testimony or report to measure the influence of discipline and the newness of the mother's home and environment upon the daughter's preference. In any event, the trial court found that both parties were fit parents and made no finding that one parent was more or less fit than the other. The record supports that finding. There is no evidence that one parent has an appreciably greater financial ability to provide for the children than the other parent. The daughter is doing very well academically, and the son is progressing well in the early stages of his education. There is no evidence that a change of custody will enhance the children's educational development. The children have continuously resided in the father's home in Naples, New York, where each child has a separate bedroom. During overnight visitations at her mother's residence, which the mother occupies with her current husband and her husband's six-year-old son, the daughter sleeps in the same bedroom with her brother and her stepbrother. Although the mother and her husband were in the process of constructing a separate bedroom for the daughter, the Law Guardian properly considered the current situation unsuitable. Because of the father's work schedule, the children's paternal grandmother arrives at the father's house early each weekday morning to get the children ready for school and is there during after-school hours until

the father returns from work. Because of the work schedules of the mother and her husband, the children would be readied for school by the husband's father. The Law Guardian expressed concern about the ability of the husband's father to care for the children. Additionally, the mother and her husband frequently work on weekends; plaintiff father does not. Finally, the record is devoid of evidence that the relationship of the children is so close that they should not be separated. The sole basis for that finding by the trial court is a conclusory statement by the Law Guardian, and it appears that the statement was based on matters dehors the record.

In sum, the record does not support a finding that the strong preference of the 10-year-old daughter to live with her mother would be in her best interests, and the expressed desire of the daughter is not a sufficient basis for changing her custodial circumstance (see, Matter of Ebert v Ebert, 38 NY2d 700, 703, supra; Feltman v Feltman, 99 AD2d 540, supra; Martin v Martin, 74 AD2d 419, supra) or for uprooting the son from the only primary caretaker he has ever known (see, Aberbach v Aberbach, 33 NY2d 592, 593; Keating v Keating, 147 AD2d 675, 678, supra; Alan G. v Joan G., 104 AD2d 147, 153, supra). Because there are no countervailing circumstances that would warrant a change in the custodial arrangement that has existed for the past five years, the trial court's determination lacks a substantial basis and should be reversed.

■ After entry of the order appealed from, the trial court denied a stay of enforcement pending appeal. As a result, the children now are residing with the mother in a different school district. Where a change of custody has been directed, trial courts should be particularly sensitive to the impact that the denial of a stay might have upon the children should it ultimately be determined that the motion for a change of custody should not have been granted. In many instances, granting the stay, together with some time limitation upon perfection of the appeal, might avoid precipitous shuttling of the children back and forth between parents and school districts. Based upon the existing circumstance, primary custody of the children should be returned to the father upon conclusion of the school year, and this matter should be remitted to Supreme Court for the fixing of an appropriate visitation schedule.

PINE, J. (concurring). I write separately because I concur

with the majority that the motion should have been denied, but for an entirely different reason. In this case, parents, who agreed to joint custody of their children, are before the court because the mother sought a court order changing the primary physical residence from the father to her. The court heard testimony from both parents, the paternal grandmother, and the mother's new husband's parents, received two reports from the children's Law Guardian recommending the change, and conducted in camera interviews with the children, a daughter aged 10 and a son aged 5. The court then changed primary physical residence based mainly on the strongly held views of the daughter that she felt closer to her mother and wanted to live with her. The father, who, with the aid of his mother, maintained a home for the children after the mother had left some five years earlier, denied that the daughter truly wanted to move but acknowledged that the mother was a good parent to whom the children were close.

The majority analyzes this case in terms of cases dealing with change of custody. I believe a more appropriate analysis would start with the fact that the parties agreed to joint custody and that neither parent is seeking sole custody. The trial court expressly reaffirmed the order of joint custody. While not statutorily provided for in New York State, "[t]here is a strong consensus that joint custody arrangements should be the alternative of choice where both parties agree to that arrangement" (4 Foster, Freed and Brandes, Law and the Family New York § 1:22, at 97 [2d ed]). Joint custody includes both shared decision making and shared time with the children (id., at 99-100). Even though serious difficulties may arise, especially when a parent lives with someone, remarries or moves (all of which happened here), joint custody most closely approximates life before separation and provides the child with the best opportunity to know and associate with both parents (id., at 100). "The chances of joint custody working may be enhanced where mediation or counselling services are available to parents who are committed to making the child's welfare the paramount concern. The interjection of a neutral and experienced third party may work wonders" (id., at 101).

Because the concept of joint custody is based on the premise that the parents are both committed to working together to foster the best interests of their children, the court ought not to be deciding joint custody disputes. If the parents cannot reach an agreement, either by themselves or with the help of a third party, the parent seeking a determination which the other parent cannot accept should be seeking sole custody, not

court intervention in joint custody *(see, e.g., Friederwitzer v Friederwitzer,* 55 NY2d 89).

In this case the majority is ordering children returned from the mother to the father after a school year in a different district, 45 minutes away from the father's home. Of course, the record that this court reviews ends with the determination on appeal. We have no information about what has happened since the children moved. The trial court's expressed hope was that the change of residence would give the children a more balanced and realistic understanding of both parents (and an appreciation of what each had given the children in the past and can continue to give in the future).

Were this case between joint custodians properly determined by the court based on principles that apply to change of custody, I would vote to affirm. The court's ultimate burden is to determine what is in the best interest of the children *(see, Friederwitzer v Friederwitzer, supra).* The court had the benefit of two thoughtful reports by the Law Guardian as well as the opportunity to hear from everyone involved. While a 10-year-old child certainly cannot automatically determine what is in her best interest, the court properly considered her views and the reasons for them. The father could not accept that the daughter really wanted to spend more time with her mother, but the court's determination that this was the daughter's strong desire is fully supported by the record. In *Friederwitzer,* the children were 11 and 8 and their wishes, although not determinative, were carried out in the ultimate decision by the Court of Appeals. The father has not identified any facts from which it could be determined that it would be contrary to the children's best interests to let them live with their mother and have extensive visitation with the father, especially in view of the fact that the father has weekends free and the mother's job requires her to work most weekends. The father's position seems to be based on his sense that change would be unfair to him after all that he has done, rather than on what is best for the children. The record supports the court's conclusion that the adjustment it ordered in contact with the parents would facilitate the children's long-term relationship with both parents.

GREEN, J. P., LAWTON and DAVIS, JJ., concur with BALIO, J.; PINE, J., concurs in a separate opinion.

Order reversed on the law, without costs, motion denied and matter remitted to Supreme Court for further proceedings in accordance with the opinion by BALIO, J.