Matter of Suzanne T. v Arthur L.T. (2005 NY Slip Op 25586)

Matter of Suzanne T. v Arthur L.T.

2005 NY Slip Op 25586 [12 Misc 3d 691]

August 23, 2005

Ruhlmann, J.

Family Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, August 02, 2006

[*1]
In the Matter of Suzanne T., Petitioner,
v
Arthur L.T., Respondent.
Family Court, Monroe County, August 23, 2005

APPEARANCES OF COUNSEL

Robert P. Turner for petitioner. Brian J. Barney for respondent. Joseph G. Nesser, Law Guardian.

OPINION OF THE COURT

Dandrea L. Ruhlmann, J.
This is a custody and visitation case. By petition filed March 11, 2004, Suzanne T. (petitioner) seeks modification of a custody agreement dated July 15, 1997 concerning her two children, Pamela and Christopher. Arthur L.T. (respondent) cross-petitioned seeking to relocate with the children but later withdrew this cross petition. Since entry of the 1997 order circumstances have changed requiring a custodial change to ensure the best interests of the children. Joint custody of the children is continued and Christopher shall continue to reside primarily with respondent but primary physical residency of Pamela is transferred to petitioner. During the school year each child will spend one weeknight with the noncustodial parent from after school until 8:00 p.m. and alternate weekends from after school on Friday until the beginning of the school day on Monday morning. The parties shall each have a different scheduled weeknight for visitation and shall alternate weekend visitation so that the children are together in one household during all visitation. Each parent will have visitation during alternate summer months so that both children reside in the same household for the entire summer vacation.
This is a unique case wherein the court heard approximately 17 days of testimony over the course of eight months. Since entry of the prior custody order eight years ago, Pamela and Christopher have grown and shaped individual personalities. Indeed [*2]Pamela is now 14 years old and an accomplished artist and Christopher is 11 years old, athletic and gifted in science. The children have witnessed growing animosity between their parents and have reacted in different ways. The children's relationships with their parents thus have evolved differently. While courts have carved out factors which must be considered in ascertaining whether a change in an existing custodial arrangement is in the best interests of children, including (1) the individual needs and expressed desires of the children; (2) the need of the children to live with siblings; (3) the continuity and stability of the existing custodial arrangement, including the relative fitness of the parents and the length of time the present custodial agreement has continued; (4) the quality of the children's home environment and that of the parent seeking custody; (5) the ability of each parent to provide for the children's emotional and intellectual development; and (6) the financial status and ability of each parent to provide for the children (Fox v Fox, 177 AD2d 209, 210 [4th Dept 1992]; see also Eschbach v Eschbach, 56 NY2d 167, 172-173 [1982]), these factors do not always neatly apply to all children from one family with uniform results. Although keeping children together is often in their best interests, courts must be cognizant of the individual needs of each child (Matter of Roulo v Roulo, 201 AD2d 937 [4th Dept 1994]). This court has considered the above-enumerated factor in light of the unique needs and best interests of Pamela and Christopher.

I. The Individual Needs and Expressed Desires of the Children

Children's preference is one factor to consider in determining where custody should lie. Although a child's preference, in itself, is not a material change of circumstance sufficient to justify a change in custody from one parent to another (see Fox v Fox, 177 AD2d 209 [1992], supra), the older and more mature the child, the greater weight will be accorded to the child's preference (Eschbach v Eschbach, 56 NY2d 167 [1982], supra).
Pamela is 14 years old—the age of preference—and in no uncertain terms wants to live with petitioner. Indeed during trial petitioner moved for emergency temporary custody of Pamela because of Pamela's outright refusal to return to respondent's home. On that occasion, Pamela traveled with petitioner for a school trip to Cooperstown. When respondent learned that Pamela was with petitioner, he became outraged and called Pamela informing her that she would have to deal with the consequences. Pamela indicated that she was frightened and refused to leave petitioner's care. Although this court denied the requested temporary relief and did not find that Pamela was in danger in respondent's home, this incident illustrates the growing lack of communication between Pamela and respondent. Respondent testified that Pamela informed him that she was traveling to Cooperstown with the school nurse and he was upset that Pamela lied. This court does not condone lying but ultimately is more concerned about why Pamela would feel the need to lie about spending this additional travel time with her mother, if she lied at all.
Pamela's in camera testimony elucidated for the court Pamela's thoughtful rationale for desiring to live with her mother. Without detail of the in camera testimony, suffice it to say that Pamela has a special relationship with her mother. Petitioner encourages and takes a great interest in her daughter's artistic talents. Petitioner arranged for Pamela to take flute lessons and even rearranged her visitation schedule to ensure that Pamela would have transportation to the lessons. Pamela talks with her [*3]mother every day on the telephone—sometimes admittedly for hours at a time. By juxtaposition, Pamela and her father, although living in the same household, do not communicate at all. Respondent himself testified that Pamela is a recluse in her bedroom while in his home.
The court is convinced that Pamela understands the need to maintain a relationship with respondent, even if not physically present in his home. (Compare Fox v Fox, 177 AD2d 209 [1992], supra [the Court determined that a 10-year-old child's strong preference to live with her mother was not in her best interests where the record was devoid of evidence that the child was possessed of exceptional judgment or maturity to decide her custodial fate].) Hearing Pamela's needs and allowing her more time with her mother may in fact foster a better relationship between Pamela and her father.
The law guardian, while reciting Pamela's preference, nonetheless recommends that custody of Pamela remain with respondent. Although the recommendation of the law guardian is important, it is not determinative (Matter of Wright v Dunham, 13 AD3d 1138 [4th Dept 2004]). Depending on the circumstances, a law guardian may properly attempt to persuade the court to adopt a position which, in the law guardian's independent judgment, would best promote the child's interest, even if that position is contrary to the wishes of the child (Matter of Carballeira v Shumway, 273 AD2d 753 [3d Dept 2000], lv denied 95 NY2d 764 [2000]). In Carballeira, the law guardian recommended a custody arrangement that was contrary to his client's desires. There, the child was 11 years old, less mature than average, easily manipulated by adults and could not articulate objective reasons for his preference. To the contrary, here, Pamela is a very mature 14 year old who is strong-willed and articulate. Again Pamela has deliberated and is able to express why living with petitioner is in her best interests. Pamela even considered the fact that petitioner lives in a different school district, has researched alternative schools and harbors no regret should she have to change school districts. This is in fact a good time for any such school transition as Pamela is about to enter high school.
Christopher is an 11-year-old boy who does not articulate a preference about where he wants to reside. He enjoys time spent with both parents and the evidence before the court shows that he has a good relationship with both parents. Interestingly, the one area where Christopher did express a strong opinion was concerning his sister. He feels that Pamela should be permitted to live with petitioner since that is where she is happiest.

II. The Need of the Children to Live with Siblings

It is beyond cavil that courts should be reluctant to separate siblings (Salerno v Salerno, 273 AD2d 818 [4th Dept 2000]). However, sometimes there is an "overwhelming need" for split physical residency arrangements (cf. White v White, 209 AD2d 949, 950 [4th Dept 1994], lv dismissed 85 NY2d 924 [1995] [split residential custody]). Split physical residency arrangements are appropriate when the best interests of each child lies with a different parent (cf. Mitzner v Mitzner, 209 AD2d 487, 488 [2d Dept 1994], citing Wurm v Wurm, 87 AD2d 590, 591 [1982], lv dismissed 56 NY2d 886 [1982] [split custody]) and courts always must be cognizant of the individual needs of each child (Matter of Roulo v Roulo, 201 AD2d 937 [1994], supra). Here, there is an overwhelming need to do something about the existing custody arrangement. Although the court is technically [*4]splitting primary physical residency, in fact the court-ordered visitation schedule will maximize the children's time together in one household.
It is in Pamela's best interests that she reside with petitioner. Pamela and petitioner share a special bond and similar interests. Pamela's artistic talents will flourish in her mother's care and Pamela will benefit from the structure of petitioner's home (Matter of Maher v Maher, 1 AD3d 987 [4th Dept 2003]). It is in Christopher's best interests that he continue to reside with respondent. Christopher has resided with respondent since the parties' divorce and enjoys school, the neighborhood and his friends. Respondent and Christopher share similar interests and enjoy spending time with one another. Christopher's talents will flourish in his father's care and Christopher will remain in the household with his new baby sister (see Matter of Maher v Maher, 1 AD3d 987 [2003], supra). Further, it is in both of the children's best interests that Pamela be permitted to reside with her mother to have normalcy returned to both households.
In Gary D.B. v Elizabeth C.B. (281 AD2d 969 [4th Dept 2001]) the Court permitted a split custodial arrangement where a teenage girl made superficial cuts to her wrists because she did not want to live with her father. While Pamela's case is not as drastic, all parties, including respondent himself, described that Pamela is miserable in respondent's home. She exhibits unhealthy behavior by staying in her room with little to no interaction with other members of the household—including her new baby sister. Pamela expressed that she would enjoy having visitation with her father and believes that if they see each other on a more limited basis they will spend more quality time together. Like in Gary D.B., this is a rare case where the breakdown in communication between one parent and child requires a change of custody applicable only as to the best interests of that one child (Gary D.B. v Elizabeth C.B., 281 AD2d at 971, citing Eschbach v Eschbach, 56 NY2d at 172).
This case is distinguishable from those where the children themselves have expressed strong desires to remain together in the same household (White v White, 209 AD2d 949 [4th Dept 1994], lv dismissed 85 NY2d 924 [1995]; see Salerno v Salerno, 273 AD2d 818 [4th Dept 2000]). Christopher, himself, candidly expressed that he would prefer to see his sister reside with petitioner for her own happiness and a sense of peace in respondent's home. This court is not minimizing the importance of sibling relationships and wishes for Pamela, Christopher and their baby sister to grow closer with time. To achieve that end, the court-ordered visitation schedule maximizes the children's time together.

III. The Continuity and Stability of the Existing Custodial Arrangement, Including the Relative Fitness of the Parents and the Length of Time the Present Custodial Agreement has Continued

A preexisting custodial arrangement, whether established by agreement or order, is a weighty factor, and should be changed based only upon "countervailing circumstances on consideration of the totality of circumstances" (Fox v Fox, 177 AD2d at 211, quoting Friederwitzer v Friederwitzer, 55 NY2d 89, 95 [1982]). Although priority must be accorded to the existing custodial agreement, when a prior disposition results from a stipulation that was not based on a best interests analysis, it will not be accorded the same weight as if it resulted from a full hearing (Matter of Maher v Maher, 1 AD3d [*5]987 [4th Dept 2003]). The parties resolved the issue of custody of their children by stipulation on July 15, 1997. Petitioner and respondent share joint custody and respondent has primary physical residency of the children. Petitioner has visitation on alternate weekends and one weekday evening. To her credit, despite the limited visitation schedule, petitioner maintains an extremely close relationship with both of her children. She attended all of her children's events (missing only one event over the course of eight years!). Every school year petitioner too becomes very well acquainted with all of her children's teachers. Petitioner served on the Parent Teacher Association and participates in various class projects. Petitioner talks with her children on the telephone everyday (sometimes for hours at a time with Pamela) and arranges her schedule so that she can give the children rides to various activities on nonvisitation days.
Initially the parties were able to cooperate with one another and arranged a switch in petitioner's weeknight visitation and different periods of holiday visitation. Before Christopher reached school age, respondent also permitted petitioner to provide child care for Christopher for a certain period of time. The animosity between the parties has grown. Petitioner testified that over the last two years, respondent denied her telephone access to her children well over 50 times, no longer allows her to provide child care for Christopher and does not permit her to pick up Christopher from school. Several of Christopher's teachers and former day care provider, Kathleen P., testified that both parents make derogatory statements about the other, sometimes in the presence of the children. There was evidence that both parties communicate inappropriately about the other directly to the children. On at least four occasions, conflict between the parties escalated requiring police involvement.
The joint custody arrangement stipulated to by the parties in 1997 imposes a duty on respondent to
"inform, in advance to the extent reasonably possible, the [petitioner] as to the children's education, activities, selections of physicians, dentists and other professionals, treating or providing therapy of any kind to the children, illnesses and operations, health, welfare, morals, religious activities and other matters of similar importance affecting the children."
It also requires respondent to provide petitioner with "complete, detailed information from any physician, pediatrician, dentist, consultant or other specialist attending the children" and entitles petitioner to "all school, insurance and other records of the children." Despite these requirements necessitating communication between the parties, communication broke down. Until this court ordered otherwise, the parties did not share the children's health insurance information. The parties even failed to communicate when the children required therapy or medical attention because of illness or injury.
Now unable to communicate in person, the parties communicate solely through electronic mail (e-mail) or, disconcertingly, by messages relayed from the children. The conflict reached its climax when petitioner received an e-mail message from respondent stating his intention to relocate with the children to Virginia. Respondent lost his job and could not find alternate work in the Rochester area. Rather than discussing this life-altering proposed move for the children, respondent threatened petitioner that she better respond to his e-mail request to relocate within three days or "there [would] be no more discussion." The stipulated order prevents relocation beyond a 35-mile radius [*6]absent agreement or court order.
A change of circumstances sufficient to warrant a change in a child custody arrangement may be established where the relationship between joint custodial parents deteriorates to the point where they simply cannot work together for the good of the children (Ulmer v Ulmer, 254 AD2d 541 [3d Dept 1998]). It is abundantly clear that although the existing arrangement has been in place for eight years and the children have thus far excelled (see Marcantonio v Marcantonio, 307 AD2d 740 [4th Dept 2003]), the problems between the parents have exacerbated and now are affecting the children. Christopher's teachers testified that, although a bright student, Christopher does not complete his homework assignments. More pronounced is Pamela's case where, although generally an outgoing child, she has become a recluse in her father's home, refusing to leave her bedroom. The current lack of stability of the custodial arrangement is yet another factor demonstrating that a change is warranted.

IV. The Quality of the Children's Home Environment and That of the Parent Seeking Custody

The children have resided with respondent at the same house in M. since the parties' divorce and stipulated agreement. At that time respondent worked full time for Kodak. The children were cared for during the summers and after school by a day-care provider. After respondent lost his job at Kodak in 2004, he worked temporarily in Virginia, lived there during the week and commuted home on weekends. The children were cared for primarily by respondent's new wife. Pamela stayed home alone after school and Christopher went to day care after school until his father picked him up at approximately 5:30 p.m. Respondent recently found full-time work in the Rochester area. During the course of this trial, respondent's wife gave birth to a baby girl.
After the parties' divorce, petitioner resided alone in an apartment until she moved in with her former partner, Lynn F. She and Ms. F. had a committed relationship and the two shared a one-family house. When that seven-year relationship ended, petitioner faced a period of instability. Petitioner lived in five different residences since June 2003 and she admittedly was involved in an abusive relationship. Petitioner shielded her children from any violence and ended the relationship. Petitioner met her current partner, Terry R., in December 2003. Petitioner and Ms. R. lived together in an apartment and currently live in a three-bedroom house. They have lived there since August 2004 and recently renewed their lease for another year. Ms. R. testified that she is a residential counselor in a group home for emotionally handicapped teenage boys and works hours that allow her to spend considerable time with the children.
The children are comfortable in both parents' homes and have their own bedrooms in each residence. The children grew up in M. and thus are familiar with the neighborhood. Christopher especially enjoys riding his bicycle around the neighborhood. The children are involved in many activities and have many friends. They feel free to do their own thing at respondent's residence.
Significantly the children find more structure at petitioner's residence. The court is convinced that while petitioner did face a period of instability, she currently is in a committed and stable relationship. Petitioner, Ms. R. and the children do activities together such as going on outings to the mall or public market or take the dogs for a walk [*7]and they all have specific chores to do around the house. The children affirmed that they enjoy the structure and adore Ms. R.
Both home environments have changed dramatically since the parties' divorce. Both parents now share their households with new partners and the children have a new sibling. Although petitioner's job flexibility allows her to be home more than respondent, the court finds that both homes are suitable for the children.

V. The Ability of Each Parent to Provide for the Children's Emotional and Intellectual Development

Both petitioner and respondent are involved with their children's educational and athletic pursuits. The teachers' testimony suggests both that neither parent is more involved than another nor that one is at fault for Christopher's failure to complete his homework. The court finds nonetheless that the petitioner and respondent relate to each child differently and that petitioner tends to support Pamela's interests whereas respondent is more responsive to his son's needs.
Pamela is an excellent student who is about to enter high school. Pamela is interested in the arts and wishes to become an actress. Petitioner strongly encourages Pamela's artistic talents by bringing Pamela to see plays both at local theaters and on Broadway. Petitioner also arranged for Pamela's flute lessons. Petitioner and Pamela are extremely close and communicate well with one another. Pamela finds great emotional support in petitioner. To the contrary, Pamela has a difficult time communicating with respondent.
Respondent relates better with Christopher and the two share similar interests. Christopher is a good student but admittedly does not always apply himself. Respondent helps Christopher in this regard. For example, respondent worked with Christopher to complete research on an older neighborhood home and the two built a model of the Sears Tower for different school projects. Respondent also encourages Christopher's love of science. To encourage Christopher to complete his homework, respondent offered Christopher a tarantula as a reward. Christopher and respondent enjoy playing video games together and respondent encouraged Christopher to become a boy scout. Christopher also attends church with respondent.
In sum each parent has an equal ability to provide emotional and intellectual support for both children. Petitioner provides more support for Pamela and respondent provides such support for Christopher.

VI. The Financial Status and Ability of Each Parent to Provide for the Children

Respondent is a computer professional who was formerly employed by Kodak. In February 2003 respondent lost his job in a general layoff. He began looking for a job in October 2002 and tried to limit his job search to the Rochester area. He accepted temporary employment in Reston, Virginia. Currently, respondent works in Rochester and earns approximately $90,000 per year. His wife works at a hospital.
Since August 2004, petitioner has worked during the school year at a nursery school as a pre-K teacher, earning $600 a week. Petitioner has a Bachelor of Science degree in biology and has taken Master's courses in deaf education for secondary science and mathematics. Petitioner also has a permanent knee injury and receives disability of $622.24 per month and a Social Security payment of $381 per month. This summer petitioner taught English to Chinese [*8]exchange students, earning $3,800. Additionally, petitioner recently became a certified medical coder and found a position through a placement office.
It is uncontroverted that respondent has worked more consistently than petitioner and petitioner has struggled more financially. Indeed petitioner admits that without Ms. R.'s income, her gross expenses would exceed her gross income. Petitioner also admits that she has not paid court-ordered child support for as long as she can remember and respondent has not demanded payment. Petitioner nonetheless has always made sacrifices to support her children. Petitioner paid for both Pamela and Christopher to attend summer camp. She paid for Pamela's flute and piccolo and pays for Pamela's flute lessons. She also has paid for the children's lesson materials, school and sporting supplies, clothing and Pamela's personal supplies. Although respondent can better provide financially, petitioner can provide adequately for her children.

Conclusion

The parties' deteriorating relationship is seriously affecting the children's best interests. There is no doubt that both parents love the children and the children benefit from substantial time with both parents. A joint custodial arrangement has worked in the past (albeit not recently) and shall continue. However, because the best interests of each child lies with a different parent, Christopher will continue to reside primarily with respondent and Pamela will reside primarily with petitioner. The parties shall consult each other seeking input as to all issues regarding their children. Since the parties have disagreed in the past, in case of disagreement petitioner will have final decision-making authority with regard to Pamela and respondent will have final decision-making authority with regard to Christopher. Neither party shall make derogatory statements about the other.
Now, therefore, it is ordered that primary physical residency of Pamela is transferred to petitioner; and it is further ordered that counsel for petitioner shall submit a detailed order reflecting the court's decision and delineated visitation schedule for approval by all counsel and the court.