Centra, J.P., and Peradotto, J.
(dissenting). We respectfully dissent in appeal No. 1 because, in our view, Supreme Court’s determination awarding sole legal and physical custody of the parties’ child to plaintiff mother lacks a sound and substantial basis in the record (see Matter of Bryan K.B. v Destiny S.B., 43 AD3d 1448, 1449 [2007]). We would therefore modify the order in appeal No. 1 by awarding sole custody to defendant father with visitation to the mother and remit the matter to Supreme Court for a different justice to fashion an appropriate visitation schedule (see id. at 1451; see also Sitts v Sitts, 74 AD3d 1722, 1723-1724 [2010], lv dismissed 15 NY3d 833 [2010], lv denied 18 NY3d 801 [2011]). We agree with the majority’s resolution of appeal No. 2.
Although, as a general rule, the custody determination of a trial court is entitled to great deference (see Eschbach v Eschbach, 56 NY2d 167, 173-174 [1982]), “[s]uch deference is not warranted . . . where [,] [as here,] the custody determination lacks a sound and substantial basis in the record” (Fox v Fox, 177 AD2d 209, 211-212 [1992]; see Sitts, 74 AD3d at 1723). Ultimately, we must determine what is in the child’s best interests “ ‘and what will best promote [his] welfare and happiness’ ” (Eschbach, 56 NY2d at 171). In making that determination “numerous factors are to be considered, including the continuity and stability of the existing custodial arrangement, the quality of the child’s home environment and that of the parent seeking custody, the ability of each parent to provide for the child’s emotional and intellectual development, the financial status and ability of each parent to provide for the child, and the individual needs and expressed desires of the child” (Bryan K.B., 43 AD3d at 1450 [internal quotation marks omitted]; see Eschbach, 56 NY2d at 171-173).
In our view, the court erred in weighing those important factors, and its determination, therefore, lacks a sound and substantial basis in the record. Most glaringly, the court failed to give sufficient weight to the child’s preference to live with the father (see Matter of Rivera v LaSalle, 84 AD3d 1436, 1437-1439 [2011]). As the majority acknowledges, the expressed wishes of the child are “entitled to great weight” in light of his age and relative maturity (Veronica S. v Philip R.S., 70 AD3d 1459, 1460 [2010]; see Matter of Mercado v Frye, 104 AD3d 1340, 1342 [2013], lv denied 21 NY3d 859 [2013]).
The child, who was already 13 at the time of the court’s order in appeal No. 1, is now 15 years old. For the last six years, he has consistently expressed his desire to live with his father, and the Attorney for the Child on this appeal asserted in her *1571 brief and at oral argument that the child still wants to live with his father. The child’s preference was expressed to the court-appointed custodial evaluator in his mother’s presence. The custodial evaluator agreed that the child’s disclosure in front of his mother was an indication that his preference was genuine. In addition, the custodial evaluator testified that the child’s preference did not appear to be the result of influence or coercion by the father (cf. generally Eschbach, 56 NY2d at 173). Although the custodial evaluator further testified that the child’s preference reflected “his wish to be loyal to the father [and] his wish to have his father be happy,” we do not view such loyalty and attachment as a reasonable basis for disregarding the child’s preference and maintaining custody with the mother.
The court’s determination also lacks a sound and substantial basis in the record insofar as that determination is based on the conclusion that the mother was better equipped to handle the child’s psychological and emotional needs. Although the mother has been the child’s primary custodial parent for many years, her relationship with him has substantially deteriorated. The record reflects the mother’s inability to handle the normal challenges of raising a teenager and her apparent failure to deal with those challenges without the use of force or profanity. The mother’s difficulty in dealing with the child is further demonstrated by the fact that she was often compelled to resort to contacting the father or others to assist in controlling the child’s outbursts or “to get [the child] to do things.” The custodial evaluator testified that the father, unlike the mother, had “no issues controlling [the child’s] conduct.” The progressively deteriorating and antagonistic relationship between the child and his mother is further evidenced by incidents in which the child kicked a hole in a wall at his mother’s house and threw a phone at his mother. The antagonism between the child and his mother demonstrates “a total breakdown in communication . . . requiring] a change in custody” (Eschbach, 56 NY2d at 172; see Matter of Maute v Maute, 228 AD2d 444, 444-445 [1996]).
The total breakdown in communication is further exemplified by evidence of the mother’s physical violence against the child, and the court failed to address and adequately account for the undisputed evidence of physical confrontations between the mother and the child. For example, the mother admitted to slapping the child’s face “[a] couple times” when he “got[ ] mouthy,” disrespectful, or rude, and she testified that she was justified in striking the child for that reason. The court was *1572 required to consider the effect of domestic violence upon the best interests of the child (see Matter of Moreno v Cruz, 24 AD3d 780, 781 [2005], lv denied 6 NY3d 712 [2006], quoting Domestic Relations Law § 240 [1]), and it failed to do so here. We conclude that the evidence of domestic violence further supports an award of sole custody to the father (see Moreno, 24 AD3d at 781; see also Matter of Caughill v Caughill, 124 AD3d 1345, 1347 [2015]).
The court also determined that the mother was more able and willing to meet the child’s educational needs. During the academic year before the mother commenced her action for divorce, when the child was in second grade, the child achieved a final grade of Ain all of his academic subjects. Since then, he has received more B and C grades primarily, it seems, because of a lack of discipline and focus. Whatever the reason, be it the ineffectiveness of the mother or the rebellion of the child, it is undeniable that his academic performance has declined while the mother has been the primary custodian.
“It is well settled that ‘[t]he authority of the Appellate Division in matters of custody is as broad as that’ of the trial court” (Sitts, 74 AD3d at 1723, quoting Matter of Louise E.S. v W. Stephen S., 64 NY2d 946, 947 [1985]). “[W]here . . . the record is sufficient for this Court to make a best interests determination . . . , we will do so in the interests of judicial economy and the well-being of the child” (Caughill, 124 AD3d at 1346 [internal quotation marks omitted]). We conclude that the record, which includes two Lincoln hearings, is sufficient for us to make a best interests determination here (see Matter of Cole v Nofri, 107 AD3d 1510, 1512 [2013], appeal dismissed 22 NY3d 1083 [2014]) and, upon review of the relevant factors, we further conclude that it is in the child’s best interests to award sole legal and physical custody to the father.
Finally, we note that the evidence to support an award of custody to the father would likely have been even stronger had the trial level Attorney for the Child (AFC) properly acted as an advocate for her client. Contrary to the position of the majority, we conclude that the AFC “failed to fulfill [her] essential obligation” to her client (Matter of Mark T. v Joyanna U., 64 AD3d 1092, 1095 [2009]). The Rules of the Chief Judge provide that an AFC “must zealously advocate the child’s position . . . even if the [AFC] believes that what the child wants is not in the child’s best interests,” unless the AFC “is convinced either that the child lacks the capacity for knowing, voluntary and considered judgment, or that following the child’s wishes is likely to result in a substantial risk of imminent, serious harm *1573 to the child” (Rules of Chief Judge [22 NYCRR] § 7.2 [d] [2], [3]; see Matter of Swinson v Dobson, 101 AD3d 1686, 1687 [2012], lv denied 20 NY3d 862 [2013]). Because neither exception allowing the AFC to substitute her own judgment for that of the child is implicated here, she was obligated to zealously advocate the child’s position (see Swinson, 101 AD3d at 1687; Mark T., 64 AD3d at 1095; cf. Matter of Rosso v Gerouw-Rosso, 79 AD3d 1726, 1728 [2010]), and she failed to do so.
Despite the child’s consistently expressed desire to live with the father, at trial the AFC objected repeatedly during direct-examination of the father and cross-examination of the mother, but did not object during direct examination of the mother or cross-examination of the father. The AFC also called as a witness a custodial evaluator whose recommendation was directly contrary to the child’s preference to live with the father. We cannot agree with the majority that the AFC fulfilled her obligation to her client by merely informing the court of the child’s wishes “without recommending any finding to the contrary.” In our view, the AFC merely parroted the child’s position to the court in a perfunctory fashion, and did not fulfill her ethical obligation to act as a zealous advocate for the child and to give voice to the child’s wishes (see 22 NYCRR 7.2 [b], [d]; see generally Mark T., 64 AD3d at 1094-1095; Matter of Dominique A.W., 17 AD3d 1038, 1039-1040 [2005], lv denied 5 NY3d 706 [2005]). The AFC’s inadequate representation of the child at the trial level further justifies reversing the court’s custody determination in appeal No. 1.
Present — Centra, J.P., Peradotto, Carni, Sconiers and DeJoseph, JJ.