Matter of Dinoff v Knechtel (2024 NY Slip Op 00551)

Matter of Dinoff v Knechtel

2024 NY Slip Op 00551

Decided on February 2, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 2, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, BANNISTER, OGDEN, AND DELCONTE, JJ.

961 CAF 22-01247

[*1]IN THE MATTER OF AMBER DINOFF, PETITIONER-APPELLANT,
v
AARON P. KNECHTEL AND REBECCA MANCHESTER, RESPONDENTS-RESPONDENTS. SUSAN B. MARRIS, ESQ., ATTORNEY FOR THE CHILD, APPELLANT. (APPEAL NO. 1.) 

THOMAS L. PELYCH, HORNELL, FOR PETITIONER-APPELLANT.
SUSAN B. MARRIS, MANLIUS, ATTORNEY FOR THE CHILD, APPELLANT PRO SE. 
 

 Appeals from an order of the Family Court, Oswego County (Thomas Benedetto, J.), entered July 8, 2022, in a proceeding pursuant to Family Court Act article 6. The order dismissed the petition. 
It is hereby ORDERED that said appeal by the Attorney for the Child is unanimously dismissed, the order is reversed on the law without costs, the petition is reinstated, the petition is granted and the matter is remitted to Family Court, Oswego County, for further proceedings in accordance with the following memorandum: These appeals involve a custody dispute between the subject child's biological mother (mother), who is a respondent in appeal No. 1 and the petitioner in appeal No. 2, and Amber Dinoff (petitioner), a former friend of the mother who has raised the child since the child was six months old and who is the petitioner in appeal No. 1 and a respondent in appeal No. 2. In appeal No. 1, petitioner appeals and the Attorney for the Child (AFC) purports to appeal from an order that dismissed petitioner's petition seeking sole legal and physical custody of the child. In appeal No. 2, petitioner appeals and the AFC purports to appeal from an order that, inter alia, awarded petitioner and the mother joint legal custody of the child, with petitioner having "interim physical custody" and the mother having visitation. In its decision regarding the petitions, Family Court noted that its order in appeal No. 2 was "subject to [the mother's] right to
re-petition the [c]ourt for a modification of [that] order to seek a transfer of custody after she has completed no less than a [six-month] period of parental access."
Preliminarily, although we conclude that the AFC's notice of appeal with respect to both appeals was untimely and that the AFC's direct appeals should therefore be dismissed (see Family Ct Act
§ 1113; Matter of Liliana G. [Orena G.] [appeal No. 2], 91 AD3d 1325, 1326 [4th Dept 2012]), we may nevertheless consider the contentions raised in the AFC's brief inasmuch as such contentions are also raised by petitioner (see generally Matter of Jayden B. [Erica R.], 91 AD3d 1344, 1345 [4th Dept 2012]). Addressing the contentions raised by petitioner, as echoed by the AFC, we conclude with respect to both appeals that the determination to award joint custody to petitioner and the mother with the goal of ultimately awarding physical custody of the child to the mother "lacks a sound and substantial basis in the record" (Fox v Fox, 177 AD2d 209, 211-212 [4th Dept 1992]; see generally Eschbach v Eschbach, 56 NY2d 167, 173-174 [1982]).
The testimony at the trial on the petitions established that the mother left the child with [*2]petitioner when the child was only six months old. For several years thereafter, the mother was abusing drugs, attempting to evade law enforcement officials, or incarcerated. Even after the mother was released from jail, she did not visit the child. In fact, up until the time petitioner filed the petition in appeal No. 1, the mother had seen the child only once since leaving the child with petitioner. Meanwhile, the child has been living with petitioner, her five biological children, and her current husband.
Petitioner commenced the proceeding in appeal No. 1 when she learned that she lacked the legal authority and paperwork to enroll the child, who was four years old at the time of trial, in school. Approximately nine months later, the mother filed the petition in appeal No. 2. At trial, the only witnesses were petitioner and the mother due to the court's determination that testimony from petitioner's proposed witnesses would be irrelevant and cumulative.
It is well settled that, " 'as between a parent and a nonparent, the parent has a superior right to custody that cannot be denied unless the nonparent establishes that the parent has relinquished that right because of surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances . . . The nonparent has the burden of proving that extraordinary circumstances exist, and until such circumstances are shown, the court does not reach the issue of the best interests of the child' " (Matter of Orlowski v Zwack, 147 AD3d 1445, 1446 [4th Dept 2017]; see Matter of Bennett v Jeffreys, 40 NY2d 543, 545-546 [1976]; Matter of Byler v Byler, 185 AD3d 1403, 1404 [4th Dept 2020]). Here, the court's determination with respect to petitioner's petition that extraordinary circumstances existed is not disputed on appeal (see Matter of Wilson v Hayward, 128 AD3d 1475, 1476 [4th Dept 2015], lv denied 26 NY3d 909 [2015]; see generally Domestic Relations Law § 72 [2] [a]). Thus, the only issue before us in these appeals concerns the best interests of the child.
"Ordinarily, the custody determination of the trial court is entitled to great deference . . . Such deference is not warranted, however, where the custody determination lacks a sound and substantial basis in the record" (Fox, 177 AD2d at 211-212; see generally Eschbach, 56 NY2d at 173). "Among the factors or circumstances to be considered in ascertaining the child's best interests are: (1) the continuity and stability of the existing custodial arrangement, including the relative fitness of the [relevant parties] and the length of time the present custodial arrangement has continued; (2) [the] quality of the child's home environment and that of the [party or parties] seeking custody; (3) the ability of each [party] to provide for the child's emotional and intellectual development; (4) the financial status and ability of each [party] to provide for the child; (5) the individual needs and expressed desires of the child; and (6) the need of the child to live with siblings" (Fox, 177 AD2d at 210).
Addressing first the continuity and stability of the existing custodial arrangement, we agree with the court that the mother's decision to ask petitioner for help in caring for the child during a time of crisis does not establish that the mother was unfit as a parent. However, in addressing the existing custodial arrangement, the court focused solely on the mother's fitness and did not address the child's need for continuity and stability. Indeed, the court did not address the bonds and relationships that the child has formed with petitioner and her children over the last several years.
With respect to the second and fourth factors, both petitioner and the mother can provide adequate housing. Although the mother is gainfully employed outside the home and petitioner is not, both petitioner and the mother have the ability to provide financially for the child. Petitioner's husband is employed, and petitioner has other sources of income. The mother currently resides with her father, and there was evidence presented at trial that called into question the safety of that environment.
With respect to the third factor, only petitioner has cared for the emotional and intellectual development of the child. Indeed, it was petitioner's desire to enroll the child in school that led to the petition in appeal No. 1, thus establishing her care for the child's intellectual development. In addition, petitioner has taken care of all of the child's medical needs without any support from the mother. In particular, petitioner has taken the child to routine medical appointments and had the child placed on her insurance, thus establishing her ability to care for the physical needs of the child. With respect to the child's emotional needs, the mother repeatedly stated that, if and when she obtained custody of the child, she would cut off all contact [*3]with petitioner and petitioner's five children, thus effectively cutting all bonds with the only family the subject child has ever known. In fact, the mother testified that she wanted no contact with petitioner's family "whatsoever." While petitioner and the mother testified inconsistently about petitioner's attempts to provide visitation between the mother and the child, irrefutable evidence established that petitioner attempted to arrange such visitation on numerous occasions. The mother never took advantage of those attempts. In addition, the mother blocked contact from petitioner, who was then left with no means to make further attempts at arranging visitation.
With respect to the fifth factor, i.e., the needs and expressed interests of the child, we note that, due to the child's age, the court did not conduct a Lincoln hearing, but the trial AFC advocated for petitioner to have sole legal and physical custody, and the appellate AFC requests the same relief. We also note that, according to the appellate AFC, the mother has failed to avail herself of the visitation provided for in the order in appeal No. 2, and thus it does not appear that there have been any changed circumstances during the pendency of these appeals regarding the child's needs and interests that would support the court's award of joint custody or warrant a new hearing on the issue of custody (see generally Matter of Michael B., 80 NY2d 299, 318 [1992]; Matter of Gunn v Gunn, 129 AD3d 1533, 1534 [4th Dept 2015]).
As discussed above, although the AFC's appeals are untimely (see Family Ct Act § 1113), the AFC is not seeking any affirmative relief beyond that requested by petitioner, who filed timely appeals. As a result, "any issue regarding whether the AFC has standing to seek affirmative relief on behalf of the child[ ] is moot" (Burns v Grandjean, 210 AD3d 1467, 1473 [4th Dept 2022]).
With respect to the sixth factor, i.e., the need to live with siblings, the mother's expressed intention of ceasing all communication with petitioner and her five children will effectively deprive the subject child of all sibling relationships the child has ever known. Although physical custody with the mother would allow for the child to have relationships with her two half-brothers, one of those half-brothers was no longer living with the mother at the time of the trial and, again, the mother testified that she wanted no contact with petitioner's family "whatsoever."
We note that the court indicated that it based its determinations, in part, on the fact that petitioner, after a period of time, allowed the child to call her "mommy," which the court characterized as the "perpetrat[ion of] a fraud" on the child. At trial, petitioner testified that, at first, she corrected the child and attempted to have the child call her "Aunt," but she eventually stopped making such corrections due to a concern that the child would feel unloved or excluded from the family. We conclude that the court gave undue weight to petitioner's actions in that regard under the circumstances of this case.
Based on the foregoing, we agree with petitioner and the AFC in appeal No. 1 that the court should have awarded petitioner sole legal and physical custody of the subject child, and we further agree with petitioner and the AFC in appeal No. 2 that the court should have dismissed the mother's petition. We therefore reverse the order in appeal No. 1, reinstate petitioner's petition, grant that petition and remit the matter to Family Court for further proceedings with respect to the issue of visitation between the child and the mother, and we
reverse the order in appeal No. 2 and dismiss the mother's petition.
Entered: February 2, 2024
Ann Dillon Flynn
Clerk of the Court